**In re Anonymous No. 48 D.B. 97**

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

DONOHUE, *Member,* December 1, 1998—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

Office of Disciplinary Counsel filed a petition for discipline against [respondent] on April 10, 1997. The peti-

tion charged respondent with engaging in the unauthorized practice of law while he was suspended and failing to comply promptly with conditions attached to a private reprimand imposed by the Disciplinary Board. Respondent filed an answer to petition for discipline on May 13, 1997.

A hearing was held on July 28, 1997 before Hearing Committee [ ] comprised of Chair [ ], Esquire, and Members [ ], Esquire, and [ ], Esquire. Respondent appeared pro se. Petitioner was represented by [ ], Esquire.

The committee filed a report on May 15, 1998 and recommended a three-year suspension. No briefs were filed by either party.

This matter was adjudicated by the Disciplinary Board at the meeting of August 13, 1998.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, [ ], was born in 1933 and was admitted to practice law in the Commonwealth of Pennsylvania on or about April 1, 1961. By order of the Supreme Court of Pennsylvania dated August 2, 1994, respondent was suspended from the practice of law for a period of three

years. His last registered office address was [ ], which is also his residence. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court, pursuant to Pa.R.D.E. 201(a)(3).

## Charge I: The [A] Matter

(3) On June 7, 1994, [A] (decedent), a resident of [ ] County, Pennsylvania, died, testate.

(4) Under decedent's will:

(a) the residuary beneficiaries, after a $2,000 bequest, were [B], 50 percent, and [C] and [D], 50 percent; and

(b) [D] was named executor.

(5) In or about June 1994, [D] retained respondent to represent him in his capacity as executor of the estate.

(6) On June 13, 1994, respondent filed with the Register of Wills of [ ] County a petition for grant of letters testamentary to [D], which was granted.

(a) Respondent failed to promptly advertise the grant of letters testamentary.

(b) Immediately after obtaining the grant of letters, respondent and [D] opened an estate bank account.

(7) By order of the Supreme Court of Pennsylvania dated August 2, 1994, respondent was suspended from the practice of law for a period of three years effective 30 days from the date of the order (September 1, 1994) and was directed to comply with the provisions of Pa.R.D.E. 217.

(8) Under cover of a letter dated August 3, 1994, Elaine M. Bixler, secretary of the Disciplinary Board of the Supreme Court of Pennsylvania, forwarded to respondent a copy of the Supreme Court order suspending him for three years, as well as standard guidance to formerly admitted attorneys.

(9) On August 22, 1994, respondent filed with the register of wills a certification of notice to heirs under Rule 5.6(a), which he signed as "counsel for personal representative," in the [A] estate.

(10) Acting upon respondent's advice, [D] issued checks on the estate account, including payments to respondent totalling $15,000 prior to September 1, 1994, and at least $14,000 thereafter.

(11) These payments were improper, in that respondent was not entitled to receive fees after September 1, 1994 for services not yet performed, and he had not earned $15,000 prior to that date.

(12) Respondent failed to withdraw from representation of the [A] estate within 30 days from the date of his suspension, as required by Pa.R.D.E. 217(b).

(13) By letter dated September 6, 1994, under cover of a letter written on letterhead identical to that which he had utilized while a practicing attorney, except that reference to his status as attorney was deleted, respondent transmitted to the register of wills a payment on account of inheritance tax.

(14) On March 7, 1995, respondent filed:

(a) an inventory, which was prepared by him and signed by [D]; and

(b) an inheritance tax return, which was prepared and signed by respondent as preparer and signed by [D] and which claimed a deduction for counsel fees in the amount of $35,000.

(15) On March 14, 1995, respondent met with [E], Esquire, and [F], Esquire, counsel for [B], at which time:

(a) the parties discussed, inter alia, the counsel fees respondent had charged the estate, as well as a possible claim of [G], a minor, by [H], his parent, challenging the will and seeking to cause probate of a prior will; and

(b) [F] requested that respondent provide documentation concerning the challenge to the will and accounting of estate funds.

(16) By letter dated March 15, 1995, addressed to respondent as "[   ], Esquire," [F] requested that he provide a statement of time spent and services provided by him and by the executor on the estate.

(17) Respondent did not provide the requested information or advise [F] that "Esquire" was an inappropriate form of address for himself.

(18) At all times respondent held himself out to [F] and [E] as a practicing attorney; at no time did he advise them that he was suspended, as he was required to do by Pa.R.D.E. 217(c)(2).

(19) On April 14, 1995, respondent transmitted to the Internal Revenue Service a check on behalf of the estate, which he had written out and [D] had signed, along with a payment voucher in which "c/o [respondent], Esq." was entered in the block captioned "Name and title of fiduciary."

(20) On June 6, 1995, a petition for citation to show cause why an appeal from the register of wills should not be sustained was filed by [I], Esquire, on behalf of [H], and the matter was certified to the orphans' court.

(a) On June 12, 1995, the Honorable [J] issued a preliminary decree and citation to [D] to show cause why [H's] appeal should not be sustained, returnable July 14, 1995.

(b) On July 12, 1995, respondent filed an answer to [H's] appeal from probate on behalf of [D] as executor.

(21) Thereafter, respondent contacted [I] and requested a continuance of the matter.

(a) By letter to Judge [J], copied to "[respondent], Esq.," dated July 13, 1995, [I] requested a continuance

in order to accommodate the request of "[respondent], Esq., the attorney representing this estate."

(b) Respondent did not advise [I] or the court that "Esquire" and "attorney for" were inappropriate forms of reference to him.

(c) In or about July 1995, respondent met with [I] to discuss the matter.

(22) At all times respondent held himself out to [I] as a practicing attorney; at no time did respondent advise him that he was suspended, as required by Pa.R.D.E. 217(c)(2).

(23) In or about August 1995, respondent provided to [F] a list of costs and expenses in the estate, which included: an additional $13,500 designated "additional counsel fees and executors fees per agreement with [E], Esq."; $10,000 designated "estimated counsel fees and costs to defend the matter of [H] v. Estate of [A]"; and $5,000 designated "estimated additional executor fees and costs in defense of [H] v. Estate of [A]."

(a) The fees and costs paid or payable to respondent were illegal and excessive, in view of the fact that respondent was not entitled thereto because of his suspension.

(b) The fees to the executor were unwarranted, in that, even if the [H] claim were legitimate, they would not affect his entitlement to executor's commissions.

(24) By letter dated August 16, 1995, addressed to "[respondent], Esquire," [F] raised questions concerning the figures respondent had provided to her, challenged the fees respondent was attempting to charge, questioned respondent's proposed settlement of the [H] claim, which respondent had stated lacked merit, and asked for additional information and documentation.

(25) Respondent did not respond to the letter, provide any further information, or advise [F] that "Esquire" was an inappropriate form of address for himself.

(26) By order dated August 31, 1995, Judge [J] ordered that respondent cease all participation as counsel for the estate and turn over all documents to [D].

(27) On September 25, 1995, respondent filed a notice of appeal of the foregoing order to the Superior Court of Pennsylvania.

(a) On October 17, 1995, respondent filed a statement of matters complained of on appeal.

(b) There were no nonfrivolous grounds for such appeal.

(c) On October 26, 1995, following consideration of the grounds for respondent's appeal, Judge [J] issued an opinion in which, inter alia, he dismissed the appeal as "arrogant and frivolous."

(d) Respondent failed to file a timely brief on appeal.

(e) By order dated January 29, 1996, the Superior Court dismissed the appeal due to respondent's failure to file a brief.

## *Charge II: The [K] Matters*

(28) Commencing in January, 1993, respondent served as executor and counsel in the estate of [K], deceased, and counsel to the executors of the estate of [L], deceased, arising from the following circumstances:

(a) [K] (decedent), a resident of [   ], died, testate, on December 30, 1992, and on February 2, 1993, letters testamentary were granted to respondent.

(b) The beneficiaries of the [K] estate were decedent's brother and sister, [M] and [L], and [N] Hospital.

(c) The assets of the estate included real property, which was sold on July 30, 1993, with net proceeds to the estate of $43,020.

(d) On April 9, 1993, [L] died, intestate.

(e) [L's] heirs, [O] and [P], retained respondent to represent them as co-administrators of her estate.

(f) On June 10, 1993, letters of administration were granted in the [L] estate.

(29) Thereafter, respondent failed to execute his duties in accordance with applicable law and the Rules of Professional Conduct, in that he failed to: file an inventory and an inheritance tax return and pay tax in the [K] estate within nine months of date of death, as required by law; communicate with the administrators of the [L] estate and subsequently with their successor counsel, [Q], Esquire; release the [L] estate file as requested by the clients; cease communication with the administrators after their retention of new counsel; account for [K] estate funds; respond to various petitions filed by [Q] in the orphans' court in the [K] estate; and comply with resultant decrees.

(30) By letter requesting a statement of respondent's position (Form D.B.-7) dated September 8, 1994, respondent was advised of allegations of professional misconduct relating to the foregoing circumstances.

(31) Thereafter, respondent failed to take appropriate remedial action and to comply with further directives of the orphans' court.

(32) On March 31, 1995, the Disciplinary Board entered an order directing that a private reprimand be administered to respondent for his violations of specified Rules of Professional Conduct in the [K and L] estates matters and requiring that he comply with the following conditions:

"At least 10 days prior to the scheduled private reprimand, respondent shall submit to the secretary of the

board and Disciplinary Counsel proof that he has filed an account in the [K] estate and complied fully with any adjudication in either the estate of [K] or the estate of [L].

"Costs, if any, are to be paid by the respondent."

(33) By letter dated April 5, 1995, Ms. Bixler advised respondent of the entry of the board's order and notified him that any request for formal proceedings had to be made within 20 days after the date of notice of disposition of the complaint.

(34) Thereafter, respondent continued to act in a dilatory manner in both the Disciplinary Board and the orphans' court proceedings, evading compliance with the board conditions by delaying the orphans' court proceedings, and repeatedly obtaining postponements of both proceedings, as follows.

(35) On June 7, 1995, the orphans' court entered a decree in the [K] estate, awarding an alias citation to respondent to show cause why a writ of attachment should not issue for failure to comply with a court order of August 18, 1994 directing him to file an account within 30 days of the entry of that order.

(a) Respondent failed to respond to the citation or file an account within 30 days of the order.

(b) Respondent filed the account on July 11, 1995, and it was listed for audit on September 11, 1995.

(36) By notice dated July 20, 1995, the board directed respondent to appear on August 17, 1995 at [   ] for the administration of the private reprimand and forwarded an additional copy of the March 31, 1995 order.

(a) By letter to the board dated August 5, 1995, received on August 9, which was not copied to petitioner, respondent requested that the reprimand be rescheduled.

(b) Respondent failed to comply with the conditions to the board order by August 7, 1995.

(c) On or about August 11, 1995, respondent transmitted to the board the "First account of [respondent], executor, estate of [K] deceased," stamped as filed in the orphans' court on July 11, 1995.

(d) By letter dated August 14, 1995, Ms. Bixler advised respondent that the board had granted a continuance of the private reprimand until its next meeting.

(37) On September 6, 1995, the beneficiaries filed objections to the account in the orphans' court.

(a) Respondent failed to appear for the audit list on September 11, 1995, and the audit was deferred to the next listing, October 2, 1995.

(b) On October 2, 1995, respondent appeared at the audit and agreed to meet with [Q] in order to provide information and attempt to resolve outstanding issues.

(c) In or about October 1995, respondent met with [Q], at which time he failed to provide the necessary information or otherwise resolve outstanding issues, and he and [Q] agreed to proceed to audit on the November list.

(38) By letter to the board dated October 12, 1995, which was not copied to petitioner, respondent requested that the board afford him the opportunity to respond to the matters set forth in the private reprimand notice.

(a) By letter to respondent dated October 20, 1995, Ms. Bixler acknowledged receipt of his October 12 letter; advised him that due to his failure to comply with the provisions of Pa.R.D.E. 208(a)(6) and Disciplinary Board Rule §87.54(b) with respect to the procedural requirements to obtain a hearing, his request was denied and pointed out that he had failed to serve Disciplinary Counsel with his request or to provide proof that he had done so, as required by board rule.

(b) By notice dated November 3, 1995, the board directed respondent to appear on December 7, 1995 at [    ] for the administration of the private reprimand, and enclosed an additional copy of the March 31, 1995 order.

(39) Respondent failed to appear in the orphans' court for the audit on November 6, 1995.

(a) On or about November 6, 1995, respondent called the chambers of the Honorable [R] and advised that he would not appear for the audit due to family illness.

(b) The audit was relisted for December 13, 1995.

(40) On December 7, 1995, respondent appeared before the board for the administration of a private reprimand, at which time:

(a) Respondent advised John L. Doherty, Chief Disciplinary Counsel, that the court had not yet adjudicated the estate.

(b) Mr. Doherty advised respondent that he was concerned that respondent had failed to appear for the previously scheduled private reprimand; that the private reprimand would be rescheduled; and that the conditions must be completed timely.

(41) On December 13, 1995, settlement negotiations took place in the orphans' court matter, which was relisted for January 11, 1996.

(a) On January 11, 1996, the matter was continued and relisted for trial on February 27, 1996.

(b) On February 27, 1996, a settlement was placed on the record, pursuant to which, inter alia, respondent was to refund $5,500 in fees to the estate by the end of April 1996; and [Q] was to assist him in preparing an amended inheritance tax return, an amended account and a statement of proposed distribution.

(c) In or about April 1996, respondent met with [Q], at which time they discussed the amended tax return and

amendments to the account, which [Q] agreed to prepare upon receipt of proof that respondent had made the payment.

(d) Respondent failed to deposit the $5,500 into the estate account by the end of April 1996, as he had agreed to do, or to notify [Q] that he would not do so.

(e) On several occasions in May and June 1996, [Q] called respondent and sent him facsimile messages requesting confirmation that the funds had been deposited.

(f) Respondent did not answer those requests.

(g) On May 29, 1996, [Q] called respondent, who stated that he would deposit the $5,500 on June 11, 1996.

(h) Respondent failed to deposit the funds on June 11, 1996, or to notify [Q] that he had not done so.

(i) [Q] called respondent on June 12, 1996, but respondent did not return the call.

(j) By facsimile transmission dated June 14, 1996, [Q] advised respondent that he would enforce the settlement agreement on the record if respondent failed to deposit the $5,500 on or before June 17, 1996.

(k) On or about June 17, 1996, respondent advised [Q] that the $5,500 would be deposited into the estate account on June 19.

(l) On June 27, 1996, respondent deposited the $5,500 into the estate account.

(42) By notice dated August 5, 1996, the board notified respondent that the private reprimand was rescheduled for August 14, 1996 at the [   ].

(a) Respondent failed to appear on August 14, 1996.

(b) By letter dated August 22, 1996, Thomas A. Leonard, chair of the board, directed respondent to advise the board by September 12, 1996 why his failure to appear should not result in the institution of formal proceedings.

(c) Respondent responded to the board by letters dated August 18 and September 10, 1996, which were not copied to petitioner.

(d) By letter dated September 19, 1996, Mr. Leonard advised respondent that his reasons were accepted by the board, but directed him to provide proof of compliance with the conditions by October 14, 1996.

(e) By letter to Mr. Leonard dated September 24, 1996, which was not copied to petitioner, respondent forwarded a copy of the account in the [K] estate and certified that he had complied with the adjudication in the matter.

(43) On October 16, 1996, respondent filed a restated account in the [K] estate, of which he forwarded a copy to petitioner under cover of an October 24, 1996 letter.

(44) By notice dated December 18, 1996, the board notified respondent to appear on January 30, 1997 at the [   ] for administration of the private reprimand.

(45) On January 23, 1997, the orphans' court confirmed the restated account.

(46) On January 30, 1997, respondent appeared before the board to receive the private reprimand, at which time the board noted that he had complied with the terms of its order dated March 31, 1995.

(47) Respondent does not suffer from alcoholism or any kind of psychological problem or drug addiction. (N.T. 21.)

(48) At the effective date of respondent's suspension, he had not advertised the grant of letters in the [A] estate, prepared final year income tax returns, filed an inventory and inheritance tax return, paid inheritance taxes, prepared a final accounting, obtained receipts and releases or filed the account, or made distribution. (N.T. 27, 42-45.)

268

(49) Exhibit R-1, "Review of activities and services performed for [A] and [S] and their estates," a list of services allegedly performed by respondent for the [A and S] includes non-legal and pre-death activities.

(50) Respondent's prior record of discipline includes a suspension of three years, by order dated August 2, 1994 for his conversion of trust funds, in violation of R.P.C. 1.15(b), 8.4(b) , and 8.4(c); and the private reprimand ordered on March 31, 1995 for violation of R.P.C. 1.1, 1.3, 1.16(d), and 8.4(d) in the [K] matter.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above in the [A] matter, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.5(a), which states that a lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee;

(2) R.P.C. 3.1, which states that a lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law;

(3) R.P.C. 5.5(b), which states that a lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction;

(4) R.P.C. 8.4(a), which states that it is professional misconduct for a lawyer to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(5) R.P.C. 8.4(c), which states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(6) R.P.C. 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice; and

(7) Pa.R.D.E. 203(b)(3), which states that willful violation of any other provision of the Enforcement Rules creates an independent basis for discipline, via:

(a) Pa.R.D.E. 217(a), which states that a formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients being represented in pending matters, other than litigation or administrative proceedings, of the . . . suspension . . . and the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the . . . suspension . . . and shall advise said client to seek legal advice elsewhere;

(b) Pa.R.D.E. 217(b), which states that a formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, return receipt requested, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party in such matter or proceedings, of the . . . suspension . . . and the consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the . . . suspension . . . The notice to be given to the client shall advise the prompt substitution of another attorney or attorneys in place of the formerly admitted attorney. In the event the client does not obtain substitute counsel before the effective date of the . . . suspension . . ., it shall be the responsibility of the formerly admitted attorney to move in the court or agency in which the proceeding is pending for leave to withdraw; and

(c) Pa.R.D.E. 217(c)(2), which states that a formerly admitted attorney shall promptly notify, or cause to be notified, of the . . . suspension . . ., by registered or certified mail, return receipt requested: all other persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing.

By his conduct as set forth in the [K] matter, respondent has violated the following Rules of Professional Conduct:

(1) R.P.C. 3.5(b), which states that a lawyer shall not communicate ex parte with a judge . . . or other official, except as permitted by law; and

(2) R.P.C. 8.4(d), which states that it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the board on a petition for discipline charging respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement in two situations. The first charge alleges that respondent engaged in the unauthorized practice of law by failing to withdraw from representation of an estate in compliance with an order of the Supreme Court of Pennsylvania dated August 2, 1994. This order suspended respondent from the practice of law for a period of three years, effective 30 days from the date of the order or September 1, 1994. After that date, respondent continued to receive fees, held himself out to other parties as an attorney and filed documents with the Internal Rev-

enue Service and the register of wills identifying himself as an attorney. Respondent also collected excessive fees and filed a frivolous appeal.

The second charge alleges that respondent failed to comply promptly with the condition of a private reprimand by failing to act with diligence and competence in performance of his duties as executor and counsel to an estate. Respondent is also alleged to have engaged in ex parte communications.

The parties stipulated to the facts of the matter, including respondent's admissions to the allegations and conclusions of law. This stipulation was introduced by petitioner at the hearing, as well as exhibits constituting evidence in aggravation of discipline. Respondent offered his own testimony at the hearing in mitigation.

Review of the record reveals that petitioner met its burden of proving by clear and convincing evidence that respondent violated the ethical rules alleged in the petition for discipline. The stipulation is clear as to the conduct leading to the violations, and respondent does not contest the facts or the conclusions of law.

The board's responsibility in this matter, after finding that respondent violated Rules of Professional Conduct and Rules of Disciplinary Enforcement, is to recommend the appropriate sanction for the misconduct. This recommendation must reflect the totality of the circumstances of this case, with consideration given to the nature of the misconduct, respondent's current fitness, the case law, and the aggravating and mitigating circumstances present.

Respondent was suspended for a period of three years by order of the Supreme Court dated August 2, 1994. In that matter, respondent converted trust funds totalling

over $75,000 held for the benefit of two beneficiaries of a trust. (Exhibit P-1A.) On March 31, 1995, the board entered an order directing that respondent receive a private reprimand with conditions. This reprimand was the result of a determination that respondent engaged in incompetent conduct which occurred prior to respondent's suspension in his capacity as personal representative of the [K] estate. (Exhibit P-2, P-2A.) The condition directed that respondent had to submit proof to the secretary of the board 10 days prior to the imposition of the private reprimand that he had filed an account in the [K] estate and complied fully with any adjudication in the [K] or [L] estates. Respondent failed to fulfill the condition until January 1997, at which time he received the private reprimand.

The misconduct involved in the instant matter arises from respondent's non-compliance with the terms of the suspension order and the condition to the private reprimand. Relative to the suspension order of August 2, 1994, respondent continued to act as counsel to [D], personal representative of the [A] estate, subsequent to September 1, 1994, the effective date of the order. Respondent prepared and filed documents and collected counsel fees. He held himself out as a practicing attorney and was aware of the belief of others that he was licensed to practice law. Respondent informed his own client, [D], of his suspended status, but continued with the representation. (N.T. 49.)

Respondent engaged in other misconduct relative to the estate of [A]. Respondent was hired in June 1994 to handle the estate and he was suspended in August 1994, yet he took payment of $15,000 in fees prior to September 1, 1994. At that time respondent had done little of the work required to conclude the administration of es-

tates and had not earned those fees. Respondent took approximately $14,000 in fees after September 1, 1994, which was improper in that he was not entitled to receive fees after that time for services not yet performed. Respondent attempted to reconstruct his records to demonstrate his fees were fair; however, his records include many activities which were non-legal and pre-dated the death of the decedents. (Exhibit R-1.) Respondent also filed an appeal to the Superior Court which was found to be frivolous.

Relative to the [K] matter, respondent failed to execute his duties to the estates. The Disciplinary Board informed respondent in March 1995 that due to his misconduct a private reprimand would be imposed. As a condition, respondent was directed to file an accounting in the [K] estate and to comply with any other adjudication involved with the [K] and [L] estates. Respondent failed to promptly attend to the condition and continued to act in a dilatory manner in resolving the [K and L] estates. In a minor incident, respondent initiated ex parte communications with the Disciplinary Board concerning the scheduling of the private reprimand. The reprimand was not imposed until January 1997, nearly two years after the determination, due to respondent's delay.

Discipline imposed in Pennsylvania for practicing law while suspended has resulted in public discipline ranging from public censure to disbarment. The attorney in *Office of Disciplinary Counsel v. Jackson,* 536 Pa. 26, 637 A.2d 615 (1994) was disbarred after he practiced law, split legal fees with an attorney and fabricated evidence during his suspension. In *Office of Disciplinary Counsel v. Herman,* 493 Pa. 267, 426 A.2d 101 (1981), the attorney was suspended for three years and during

that time he held himself out as an attorney, failed to advise his clients of his suspension, and concealed his conduct by arranging for another attorney to cover his court appearances. The Supreme Court disbarred Mr. Herman for this activity.

While the misconduct in the instant case is not as egregious as in *Jackson* and *Herman,* in that respondent represented one long-standing client rather than several clients and passively rather than actively promoted the idea that he was entitled to practice, the totality of respondent's misconduct warrants a lengthy suspension. Respondent continued to practice law while suspended in direct violation of a Supreme Court order. Respondent continued this representation for approximately 12 months. Respondent did not handle his cases with competence and diligence, filed a frivolous appeal, and collected excessive fees to which he was not entitled. There is no evidence of record that the fees were refunded to the estate by respondent. Respondent was dilatory in complying with a condition of a private reprimand.

Respondent's prior disciplinary history includes a three-year period of suspension in 1994 for converting approximately $75,000 from an estate by forging the signature of the co-executor, and the private reprimand administered in 1997. It is clear from the facts of this matter that respondent's prior discipline did not impress upon him the necessity of handling his legal practice with care and diligence. Even with a suspension looming over him, respondent continued in a course of conduct which exhibited disregard for the Rules of Professional Conduct.

Respondent is 65 years of age and has been practicing law since 1961. Prior to his original suspension in 1994, his disciplinary record was unblemished. Since 1994, however, respondent has experienced numerous disciplinary problems. Respondent expressed remorse at the

hearing and admitted that his conduct was "stupid" and lacked good judgment (N.T. 31), yet this realization came too late in the day to aid respondent. At the present time he is not fit to practice law.

The Hearing Committee recommended a three-year suspension, based in part on the recommendation of petitioner, which suggested a suspension of not less than two years. The board is of the opinion that a suspension longer than three years must be imposed. Respondent's original suspension was for a three-year period. During that time he continued to practice law in direct violation of the Supreme Court order suspending him. Respondent's unauthorized practice of law constitutes a significant aspect of the instant misconduct. In order to emphasize the seriousness of practicing law while suspended, the board is persuaded that a suspension longer than the original suspension must be imposed on respondent. The board recommends a four-year suspension consecutive to his prior suspension.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [   ], be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of four years with said period of suspension to run consecutively to the period of suspension previously imposed by your court on August 2, 1994 at no. 145 D.B. 91.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Marroletti, George and Morris would recommend a two-year suspension.

Board Member Peck would recommend a five-year suspension.

## ORDER

And now, March 24, 1999 upon consideration of the report and recommendations of the Disciplinary Board dated December 1, 1998, it is hereby ordered that [respondent] be and he is suspended from the bar of this Commonwealth for a period of four years to run consecutively to the period of suspension previously imposed by this court on August 2, 1994 at no. 145 D.B. 91, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Castille and Nigro dissent and would enter a rule upon respondent to show cause why he should not be disbarred.